IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JACK NELSON ROOKS,
      Plaintiff,

vs.                                  Case No.: 5:17cv210/EMT

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,
      Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 9, 10).  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed.

## I.       PROCEDURAL HISTORY

On February 26, 2014, Plaintiff filed an application for SSI, and in the application he alleged disability beginning January 1, 2011 (tr. 13).[1] His application was denied initially and on reconsideration, and thereafter he requested a hearing before an administrative law judge ("ALJ").  A hearing was held on April 6, 2016, and on June 28, 2016, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 13–21).  The Appeals Council subsequently denied Plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

## II.      FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (see tr. 13–21):

(1)      Plaintiff did not engage in substantial gainful activity after February 26, 2014, the date he applied for SSI;

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on October 24, 2017 (ECF No. 12).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

Case No.: 5:17cv210/EMT

(2)     Plaintiff had the following severe impairments during the relevant period[2]: cervical and lumbar degenerative disc disease ("DDD"), left hip osteoarthritis, degenerative joint disease of the left knee, and obesity;

(3)     Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, subpart P, Appendix 1;

(4)     Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except standing/walking was limited to a maximum of two hours in an eight-hour workday.[3]  Plaintiff could not climb ramps, stairs, ladders, ropes, or scaffolds, and he could only occasionally balance, stoop, kneel, crouch, or crawl.  He required a hand-held assistive device for standing and walking.  He was able to sit eight hours in an eight-hour workday;

(5)     Plaintiff has no past relevant work;

(6)     Plaintiff was born on December 18, 1966, and was 47 years of age, which is defined as a younger individual between the ages of 18 and 44, on the date he applied for SSI;

(7)     Plaintiff has at least a high school education and is able to communicate in English;

(8)     Transferability of job skills is not an issue because Plaintiff has no past relevant work;

---

[2] The relevant period is February 26, 2014 (the date Plaintiff applied for SSI), through June 28, 2016 (the date the ALJ issued his decision).  *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which he is both disabled and has an SSI application on file).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a).

(9)    Considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed during the relevant period; therefore, Plaintiff was not under a disability, as defined in the Act, through the date of the ALJ's decision.

III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a

scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.   The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy." *Id*. § 423(d)(2)(A). Pursuant to 20 C.F.R.

§ 404.1520(a)–(g),[4] the Commissioner analyzes a disability claim in five steps:

1.    If the claimant is performing substantial gainful activity, he is not disabled.

2.    If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.    If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent his from doing his past relevant work, he is not disabled.

5.    Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

---

[4] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations in this Order should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

Case No.: 5:17cv210/EMT

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S MEDICAL HISTORY[5]

Plaintiff underwent left knee anterior cruciate ligament ("ACL") surgery in the 1990's and did well until the early 2000's (he reports), at which time he began to feel increasing pain and instability.

Plaintiff also had issues with his right hand, for which he received treatment at the St. Andrew Medical Clinic ("St. Andrew's") by Linda Caruso, a nurse practitioner, in 2012 and 2013, and also had a cyst removed on his right middle finger.  Nerve conduction studies from February of 2014 revealed carpal tunnel syndrome ("CTS"), bilaterally.

---

[5] In this section the court has relied upon the ALJ's summary of Plaintiff's medical history (tr. 17–19), unless otherwise indicated.

Also in early 2014, Plaintiff began reporting severe low back pain that radiated into his lower extremities. Plaintiff was noted to have a wide-based gait and to be unable to tandem-walk or walk on his toes or heels. Electromyography testing showed signs of bilateral L5-S1 radiculopathy, and lumbar x-rays from February of 2014 showed degenerative changes at multiple levels, most prominently at L5-S1 (tr. 245). The same x-rays also showed lateral recess stenosis bilaterally and moderate to marked foraminal stenosis bilaterally secondary to degenerative changes and bulging disc material, with the possibility of an impinged nerve root at L5 (*id.*). X-rays of the cervical spine and left hip, also obtained in February of 2014, showed some slight abnormalities and resulted in diagnostic impressions of disc disease at C4-C5 and C5-C6 and degenerative arthritis of the hip (tr. 247). The most significant abnormalities were found in Plaintiff's left knee, as evidenced by a variety of studies (e.g., an MRI) and examinations. For example, an MRI obtained in December of 2015 revealed tri-compartmental osteoarthritis and tri-compartmental chondromalacia; degenerative changes of both menisci, but no obvious meniscal tear; diffuse patellar tendinosis and distal quadriceps tendinosis, with mild proximal patellar tendinitis and mild prepatellar bursitis; and degeneration of the ACL in a diffuse fashion (tr. 321).

Plaintiff continued treatment with ARNP Caruso and/or ARNP Dyane Makins in 2014, 2015, and 2016 for back problems, left knee problems, and abdominal pain

but was referred to a specialist for his knee in January of 2016. The specialist ultimately recommended a total left knee arthroplasty, which Plaintiff had not yet obtained at the time the ALJ's opinion issued evidently due to cost issues.

Finally, although Plaintiff's weight has fluctuated, he was obese during the relevant period, at one point weighing 350 pounds with a height of six feet, two inches, which equates to a BMI of 44.93.

C.    Other Information Within Plaintiff's Claim File

At Plaintiff's hearing, held April 6, 2016, he testified that his primary problems are with his knee and back, but that he has "bad neuropathy" too (tr. 36), perhaps referring to his left lower extremity, as he noted that his left calf muscle had "atrophied . . . [and] gone to [] mush," and/or referring to his buttock, which he states goes numb (*see* tr. 39, 42, 49). He confirmed that the recommended left knee arthroplasty had not yet been scheduled, commenting that it was due to a cost issue (*see* tr. 38). He testified he could stand for up to thirty minutes on a good day and for ten to fifteen minutes most of the time (*see* tr. 40). He also noted he uses a cane or walker for "all walking," and that if his leg gives out on him his arms are strong enough to catch himself and prevent him from falling (tr. 41). He stated that his neck and shoulders get stiff, but such was minor in comparison to his knee and other issues

(*see* tr. 43).  When asked about the CTS diagnosis, Plaintiff responded that hands get

"achy and sore" and that, although he can prevent himself from falling when he is

using a walker, he "can't squeeze nothing," evidently because his hands are not as

strong as they once were (*see* tr. 44).  He also says he drops things due to a lack of

sensitivity in his fingers or due to a lack or strength or numbness—he's not sure (tr.

45).  If Plaintiff sits for a while, he needs to get up and stretch (*id*.).  He estimated that

he could probably sit for no more than forty-five minutes before having to stand, again

noting that his left buttock goes numb (tr. 46).

Upon questioning from his attorney, Plaintiff stated he lies down four to five

hours a day, sometimes elevating his feet, in order to alleviate swelling in his feet and

knee (tr. 48–49).

A vocational expert ("VE") testified at Plaintiff's hearing.  The VE was asked

whether a hypothetical person with Plaintiff's RFC could perform any competitive

employment (tr. 51).  The VE stated that such a person could be employed only if he

"had unlimited sitting abilities, meaning they could sit for eight out of eight hours" (tr.

51–52).  The exchange between the VE and the ALJ then continued as follows:

A [VE]:     If a person needs a cane to stand at a work station, they're basically a
            one-armed worker at that point so they can basically perform that --

Q [ALJ]:    So it would have to be a job where it's sitting for eight hours a day?

A:      Correct.

Q:      Okay.  Let's see here.  And we have it standing and walking limited to two out of eight; so does that, in your mind, that precludes eight hours of sitting?

A:      Well, I was basically asking for a clarification --

Q:      Okay.  Okay.

A:      -- [INAUDIBLE] there any limitations on sitting.  Because sedentary is normally defined as sitting for six out of eight but [INAUDIBLE] work; there --

Q:      All right.

A:      -- are no restrictions on the hypothetical, they would meet eight out of eight, meaning no breaks from sitting [INAUDIBLE] scheduled work breaks.

Q:      All right.  Well, let's clarify that the limitation would be standing and walking up to eight hours a day -- excuse me -- standing and walking up to two hours a day, with the remainder sitting but they would have the option of sitting for a total of eight hours, so that would permit some work?

A:      There are a limited range of sedentary occupations that would be performed in a seated position with really the only standing involved being during regularly scheduled work breaks.

Q:      Okay.

A:      At the sedentary, unskilled level, that would include general production worker.  An example DOT is 734.687-042, with an SVP of 2, with approximately 21,000 such positions in the U.S. economy; inspector and tester, an example DOT is 669.687-014, with an SVP of 2, with

approximately 22,000 positions in the U.S. economy allowing for those restrictions; also, assembler, an example DOT is 700.687-018, with an SVP of 2, with approximately 25,000 positions in the U.S. economy that such a person could perform.

Q:          All right. And if the person was required to stand and walk two hours out of eight, then that would preclude all employment?

A:          If the person required a cane to stand at the work station that would eliminate all employment, yes.

Q:          Okay. All right. So that will be the second hypothetical from sitting up to six hours a day, with the remainder standing and walking, and that would preclude -- no jobs.

A          Your Honor, just to clarify all of my answers that address the need to use a cane, while standing, are based on my own experience. That's not addressed in the DOT.

Q:          Okay. But, otherwise, your testimony is consistent with the DOT?

A:          Yes, Your Honor.

(tr. 52–54).

## V.    DISCUSSION

Plaintiff contends the ALJ erred: (1) in failing to conclude at step two that his carpal tunnel syndrome is a severe impairment; (2) in finding Plaintiff less than fully credible; (3) by considering Plaintiff's lack of any significant work history prior to the date he alleges he became disabled; and (4) in determining Plaintiff's RFC. Also woven into Plaintiff's arguments is a concern shared by the undersigned that Plaintiff

actually *could not have* performed those jobs that the VE identified and that the ALJ subsequently determined Plaintiff *could have* performed in finding him not disabled at step five.

Based on these concerns and others articulated below, the undersigned finds that a remand for additional administrative proceedings is appropriate in this case.

First, the ALJ operated under the assumption that Plaintiff's alleged onset date was in January of 2011 (*see* tr. 15), and not in February of 2014,[6] and the ALJ based his credibility findings at least in part on this erroneous assumption. For example, the ALJ concluded that Plaintiff has medically determinable impairments that reasonably could be expected to cause some of his symptoms (tr. 17). Then, as the Eleventh Circuit pain standard requires, the ALJ addressed the extent to which the intensity and persistence of Plaintiff's pain limits his ability to work, citing the record and identifying factors to support his conclusion that Plaintiff's statements are not credible to the extent they are inconsistent with the assessed RFC (*id.*). The very first factor cited by the ALJ concerns Plaintiff's allegation of "disability commencing January 2011" but failure to seek treatment "until seventeen months later, in June 2012" when

---

[6] The ALJ's error is understandable, as Plaintiff originally alleged an onset date in January of 2011 (*see, e.g.*, tr. 125), nevertheless, the mistake is not harmless under the totality of the circumstances of this case.

Case No.: 5:17cv210/EMT

Plaintiff began seeing ARNP Caruso at St. Andrew's for relatively minor issues, including an issue with a lesion on his finger (*see* tr. 17). While the undersigned could exclude this factor and consider whether the other factors identified by the ALJ, standing alone, are sufficient to uphold the ALJ's overall credibility findings, the undersigned declines to do so here, as it is not the only error of the ALJ, and is unclear to what extent this preliminary assessment of Plaintiff's overall credibility might have factored into ALJ's later findings in this case.

Second, while formulating Plaintiff's RFC and making other findings, the ALJ relied in part on the opinions of a treating physician (Dr. Jacob) and a non-examining agency physician (Dr. Patty), but these physicians offered their opinions in February of 2014 and July of 2014, respectively, at or near the commencement of the relevant period (*see* tr. 19, 72, 265), when the evidence of record obtained in December of 2015 shows evidence of a significant knee condition, which obviously had worsened over time. Even if the ALJ had been aware of the correct onset date, February 26, 2014, this court would be hard-pressed to conclude that opinions offered during the first half of 2014 could provide substantial support for an RFC determination that must reflect Plaintiff's condition during the relevant period, which continued through June of 2016.

Last, but not of least importance, the undersigned does not find that the record convincingly establishes that Plaintiff was capable of performing the sedentary jobs identified by the ALJ (production worker, inspector/tester, and assembler (*see* tr. 20)), because the VE indicated that these jobs could be performed only if the hypothetical person stood *only* during regularly scheduled work breaks and otherwise (essentially) sat the remainder of the eight-hour workday. The VE went on to state if the person were required to stand/walk two hours out of eight, and required a cane while doing so, "that would eliminate all employment." Yet, the RFC essentially tracks this latter scenario. As previously noted, the ALJ determined an RFC for sedentary work, which often requires "a certain amount of walking and standing [to carry] . . . out job duties," 20 C.F.R. § 416.967(a), *and* the ALJ specifically incorporated a limitation of *up to* two hours of standing or walking into Plaintiff's RFC.

The undersigned acknowledges that the ALJ also added to the RFC a finding that Plaintiff was able to sit eight hours in an eight-hour workday, but it appears the ALJ added this to the RFC solely because of the VE's testimony that such was necessary for Plaintiff to have been able to perform any work. This add-on therefore appears to be based on vocational testimony about job availability instead of the medical evidence of record. What is more, despite the add-on, the ALJ left unchanged

his earlier RFC findings that Plaintiff could walk or stand up to two hours a day (which precludes work due to Plaintiff's need for a cane).

Thus, whereas the VE found that Plaintiff should have to sit for the entire eight-hour workday in order to perform the jobs identified, the ALJ held found Plaintiff was capable of sitting for an eight-hour workday; and where the VE found that Plaintiff essentially could not at all stand during the workday (and still perform these same jobs), the ALJ found that Plaintiff could stand for two hours. The inconsistency of these findings significantly calls into question the ALJ's RFC determination and his conclusion that Plaintiff could perform the jobs identified by the VE.[7]

The undersigned is thus unable to conclude that the jobs identified by the VE, jobs which formed the basis of the ALJ's determination at step five that Plaintiff was not disabled, are in fact jobs Plaintiff could have performed.

## VI. CONCLUSION

In Social Security cases, the role of this court is to determine whether the law has been properly applied and whether substantial evidence supports the Commissioner's findings, not to find facts. Because of this limited role, the general

---

[7] The ALJ also included in the RFC an ability to occasionally kneel, crouch, and crawl. The undersigned finds no support in the record for these findings given the state of Plaintiff's left knee.

Case No.: 5:17cv210/EMT

rule is to reverse and remand for additional proceedings when errors occur. *See, e.g.*,
Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (referring to general practice);
Foote, 67 F.3d at 1562 (stating that an insufficient credibility finding is "a ground for
remand when credibility is critical to the outcome of the case") (emphasis added);
Salter v. Astrue, No. 3:08cv189/RV/EMT (N.D. Fla. May 22, 2009) (ECF No. 15)
(same). A case may be remanded for an award of disability benefits, however, where
the Commissioner has already considered the essential evidence and it is clear that the
cumulative effect of the evidence establishes disability without any doubt. Davis, 985
F.2d at 534; *see also* Bowen v. Heckler, 748 F.2d 629, 636 (11th Cir. 1984) (if the
Commissioner's decision is in clear disregard of the overwhelming weight of the
evidence, Congress has empowered the courts to modify or reverse the decision with
or without remanding the case for a rehearing); Carnes v. Sullivan, 936 F.2d at1219
("The record . . . is fully developed and there is no need to remand for additional
evidence."); MacGregor, 786 F.2d at 1053 (where Commissioner does not discredit
or make any findings regarding the weight of a treating physician's opinions, the
opinions must be accepted as true).

Here, the cumulative effect of the evidence does not establish disability without
any doubt. Instead, the record shows that the ALJ considered Plaintiff's case under
the original alleged disability onset date, not the amended date; relied at least in part

on outdated opinions to support his findings; and made an RFC determination that is not supported by substantial evidence in the record as a whole and/or is inconsistent with his findings at step five.

For the foregoing reasons, the undersigned concludes that the Commissioner's decision is not supported by substantial evidence and should not be affirmed. *See* 42 U.S.C. § 405(g); Foote, 67 F.3d at1556 (remanding for additional administrative proceedings).

Accordingly, it is hereby **ORDERED**:

1.      That the Commissioner is directed to remand this case to the Administrative Law Judge for further proceedings consistent with this Order.

2.      That **JUDGMENT** is entered, pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's decision and **REMANDING** this case for further administrative proceedings.

3.      That the Clerk is directed to close the file.

At Pensacola, Florida this 10th day of September 2018.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**